```
FOLEY & LARDNER
ATTORNEYS AT LAW
ONE MARITIME PLAZA, SIXTH FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3404
TELEPHONE: (415) 434-4484
FACSIMILE: (415) 434-4507

JAY P. HENDRICKSON, BAR NO. 85661
IVONNE KING, BAR NO. 214386
ATTORNEYS FOR PLAINTIFF HEWLETT-PACKARD
COMPANY
```

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| HEWLETT-PACKARD COMPANY, <br><br> PLAINTIFF, <br><br> V. <br><br> NETWORK AUTOMATION, INC., <br><br> DEFENDANT. | Case No. C02-00332 JW RS <br><br> COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF <br><br> ADR |

## NATURE OF THE ACTION

This is a declaratory judgment action for a declaration of non-infringement and invalidity of U.S. Patent No. 5,712,960 (at times hereinafter "'960 Patent"), entitled "System and Methods for Intelligent Database Management Using Abductive Reasoning." (*See* Exhibit A.) This is also a declaratory judgment action for a declaration that Hewlett-Packard Company did not breach any contracts with, nor misappropriate any trade secrets or other confidential information allegedly belonging to, Network Automation, Inc.

## PARTIES

1. Plaintiff Hewlett-Packard Company ("Hewlett-Packard") is a Delaware

-1-

COMPLAINT FOR DECLARATORY JUDGMENT
AND INJUNCTIVE RELIEF
Case No._____

016.263592.2

1  corporation having a principal place of business located at 3000 Hanover Street, Palo Alto, California, 95304, and is doing business in this judicial district.

2. Upon information and belief, Defendant Network Automation, Inc. ("Network Automation") is a company residing in Los Altos, California.

## JURISDICTION

3. This is an action for declaratory judgment, brought pursuant to 28 U.S.C. §§ 2201 and 2202. This action concerns a controversy arising under the patent laws of the United States and the statutory and common law of the State of California. This action is brought pursuant to Title 35 of the United States Code, the California Uniform Trade Secrets Act (Cal. Civ. Code § 3426, *et seq.*), and the common law of the State of California. By this action Hewlett-Packard seeks, *inter alia*, a declaratory judgment that: (i) U.S. Patent No. 5,712,960 is invalid and not infringed by Hewlett-Packard; (ii) it did not breach any contracts it may have had with Network Automation or any of Network Automation's predecessor's in interest, including CV Soft; and (iii) it did not misappropriate any trade secrets, or other confidential information, allegedly belonging to Network Automation or any of Network Automation's predecessor's in interest, including CV Soft.

4. This Court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 1331, 1338, and 1367.

5. On December 12, 2001, Network Automation filed an action against Hewlett-Packard in the United States District Court, Middle District of Florida, Fort Myers Division (hereinafter, "the Florida Complaint") (Case No. 2:01-CV-675-FTM-29DNF). (*See* Exhibit B.) Hewlett-Packard was served on January 2, 2002. The Florida Complaint included causes of action alleging infringement of the '960 Patent, breach of contract, and misappropriation of trade secrets and other confidential information by Hewlett-Packard. Prior to the date on which Hewlett-Packard's Answer or other responsive pleading was due, Network Automation filed a voluntary dismissal which was granted by the Florida District court on January 7, 2002. (*See* Exhibit C.)

-2-

COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF
Case No._____

016.263592.2

6. An actual case or controversy exists between the parties based on Network Automation's threats to file litigation and its actual filing of litigation against Hewlett-Packard for *inter alia*, infringement of the '960 Patent, misappropriation of trade secrets and breach of contract. Although Network Automation voluntarily dismissed the Florida Complaint, Hewlett-Packard has a reasonable apprehension of suit in that it is likely that Network Automation will refile its lawsuit.

7. Venue is proper in this district under 28 U.S.C. §§ 1391(b) and 1400(b) because the Defendant resides in this district and is subject to personal jurisdiction in this district.

## BACKGROUND FACTS

8. U.S. Patent No. 5,712,960 entitled "System and Methods For Intelligent Database Management Using Abductive Reasoning", issued January 27, 1998. The assignee of record is CV Soft, S.R.L. ("CV Soft"). On information and belief, CV Soft is a foreign company, which at times relevant to the facts herein was located in Bergamo, Italy.

9. Network Automation claims to be the owner of all right, title and interest to the '960 Patent and has otherwise represented that it is either the owner of the '960 Patent (Florida Complaint at ¶ 9), the exclusive licensee of the '960 Patent with all substantial rights of ownership, or otherwise has all of the rights of ownership necessary to enforce the '960 Patent by virtue of (i) CV Soft being the "development company that Network Automation exclusively licensed the technology from," (ii) CV Soft being "the predecessor in interest to" Network Automation (Florida Complaint at ¶¶ 11, 19), and "that Network Automation was formed in Italy operating under the name CV Soft" (Complaint at ¶ 18).

10. The Network and System Management Division of Hewlett-Packard, GmbH, located in Boblingen, Germany, was responsible for evaluating the CV Soft/Network Automation project and, as a result of the initial discussions, in or about February 1993, Hewlett-Packard, GmbH and Network Automation's predecessor in interest, CV Soft (at all times hereinafter, any reference to Network Automation shall also include any assignor or any other predecessor in interest to Network Automation relating to that certain technology generally

-3-

COMPLAINT FOR DECLARATORY JUDGMENT
AND INJUNCTIVE RELIEF
Case No._____

016.263592.2

referred to as the "Network Configurator" technology) entered into a Confidential Disclosure Agreement ("CDA") (*see* Exhibit D) executed on or about February 3, 1993.

11. The February 3, 1993 CDA defined "Confidential Information" as *inter alia*, information not publicly known or already in the other party's possession that "concerns any information/material required for the evaluation of a potential partnership in the area of Network and System management." The CDA further defined "confidential information" as information received between February 1993 and June 1993. (Exhibit D, at ¶¶ I.1 to I.3.)

12. Hewlett-Packard's obligations regarding the "Communication and Use" of "confidential information" were limited in Paragraph II of the CDA. (Exhibit D, at ¶¶ II.1 to II.4). Paragraph II required written or tangible items to be explicitly marked as confidential and required any oral or intangible items intended to be treated as confidential information to be identified as confidential at the time and to be summarized in writing, with appropriate confidentiality markings, within thirty days. (Exhibit D at ¶¶ II.2).

13. Paragraph IV of the CDA, entitled "Duration," stated that "The obligations contained in Paragraph II shall terminate on June '93." (Exhibit D, at ¶ IV.)

14. In or about July 1993, Hewlett-Packard and Network Automation, Inc., entered into a Confidential Disclosure Agreement ("CDA") (*see* Exhibit E), executed on or about July 14, 1993.

15. The terms of the July 1993 CDA were essentially identical to the February 1993 CDA except that in the July 1993 CDA: (a) "confidential information" was defined as information received between July 1993 and December 1993 (Exhibit E, at ¶¶ I.1 (c)); and (b) Paragraph IV, entitled "Duration," stated that "The obligations contained in Paragraph II shall terminate on Dec. 1995." (Exhibit E, at ¶ IV.).

16. Hewlett-Packard declined to pursue a business relationship with Network Automation. Hewlett-Packard communicated its decision to Network Automation in or about September 1993.

17. Hewlett-Packard did not use any confidential information purportedly conveyed

-4-

COMPLAINT FOR DECLARATORY JUDGMENT
AND INJUNCTIVE RELIEF
Case No._____

016.263592.2

by Network Automation under either the February 1993 CDA or the July 1993 CDA.

18. On December 12, 2001, Network Automation filed the Florida Complaint. Among other things, the Florida Complaint alleged that Hewlett-Packard's Open View technology infringes the '960 Patent. (Exhibit B, Count I.).

19. The Florida Complaint also alleged that Hewlett-Packard: (i) breached the February 3, 1993 CDA by "appropriating and incorporating the technology acquired from [Network Automation] in its software systems, and marketed that software to customers" (Exhibit B, Count II); and (ii) misappropriated and used the subject system technology and confidential information knowing that the information was used and obtained "in violation of a Confidential Disclosure Agreement" (Florida Complaint, Exhibit B, Counts V and VI).

20. On December 28, 2001, Network Automation withdrew its Complaint by filing a "Notice of Voluntary Dismissal Without Prejudice" and on January 7, 2002, the Florida District Court issued an Order dismissing the Florida Complaint without prejudice. (Exhibit C).

### Count I – Non-Infringement of the '960 Patent

21. Hewlett-Packard realleges and incorporates by reference Paragraphs 1-20 of the Complaint.

22. Network Automation has specifically charged that the Hewlett-Packard Open View/IT Administration technology infringes the '960 Patent. (Florida Complaint, Exhibit B, ¶ 36, Count I, ¶¶ 39-40.)

23. The processes used by Hewlett-Packard's Open View product are substantially different from any of the processes or methods taught and claimed in the '960 Patent, do not include all of the elements of any of the claims of the '960 Patent, and hence do not infringe any of the claims of the '960 Patent.

24. Neither the Open View product, nor any other product manufactured, sold or used by Hewlett-Packard infringes, directly or indirectly, any valid or enforceable claim of the '960 Patent.

25. Neither the Hewlett-Packard Open View product, nor any other product, has

contributed to the infringement of others, or actively induced others to infringe, any valid or enforceable claim of the '960 Patent.

### Count II – Invalidity of the '960 Patent

26. Hewlett-Packard realleges and incorporates by reference Paragraphs 1-25 of the Complaint.

27. The claims of the '960 Patent are invalid under at least 35 U.S.C. §§ 102, 103 and 112.

### Count III – No Breach of Contract

28. Hewlett-Packard realleges and incorporates by reference Paragraphs 1-27 of the Complaint.

29. Both the February 1993 and July 1993 Confidential Disclosure Agreements were executed by Hewlett-Packard, GmbH and Network Automation, respectively and the terms are fully enforceable.

30. Hewlett-Packard did not violate or otherwise breach any of the terms of either the February 1993 Agreement or July 1993 Agreement.

31. Hewlett-Packard's Open View product was developed independently of any trade secret or confidential information received from Network Automation.

32. To the extent any trade secret or confidential information was obtained, Hewlett-Packard did not use any such information, and/or did not use such information in a manner inconsistent with the terms of the Agreement.

33. Both the February 1993 Agreement and July 1993 Agreement had express terms which limited the duration of the trade secret/confidential information. Pursuant to the time limits contained in the Agreements, after expiration thereof, Hewlett-Packard could use any confidential information that Network Automation had disclosed.

34. Network Automation is further precluded from claiming any breach of the Agreements by the express terms of this Agreement, in that the information was or became publicly available.

35. Any claim by Network Automation that Hewlett-Packard's conduct breached the contract is barred by the applicable statute of limitations.

36. Hewlett-Packard has performed all conditions precedent required to be performed by Hewlett-Packard, or the conditions have occurred.

### Count IV – No Misappropriation of Trade Secrets and Confidential Information

37. Hewlett-Packard realleges and incorporates by reference Paragraphs 1-36 of the Complaint.

38. Hewlett-Packard has not misappropriated any Network Automation trade secret or confidential information.

39. Hewlett-Packard's Open View product was independently developed.

40. Hewlett-Packard did not use any trade secret or confidential information of Network Automation in the development of the Open View product or any other Hewlett-Packard product.

41. The express terms of the Confidential Disclosure Agreements executed by Network Automation provide that the obligation of confidentiality expired in December 1993 and December 1995, respectively. Thereafter, Hewlett-Packard was free to use any information Network Automation disclosed to it. Any use by Hewlett-Packard was therefore not a violation of any valid or subsisting right of Network Automation.

42. The Confidential Disclosure Agreements both expressly excluded information that entered the public domain. To the extent any information obtained from Network Automation was used by Hewlett-Packard it was information in the public domain and accordingly did not constitute trade secret or confidential information.

43. Network Automation is barred from asserting that Hewlett-Packard misappropriated trade secret or confidential information by virtue of the fact that the statute of limitations for asserting such a cause of action has expired.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Hewlett-Packard respectfully requests that the Court enter


judgment that:

    a.    Hewlett-Packard has not infringed, induced others to infringe or contributed to infringement of any of the claims of U.S. Patent No. 5,712,960;

    b.    U.S. Patent No. 5,712,960 is invalid;

    c.    Hewlett-Packard has not breached any of the terms of the Confidential Disclosure Agreements entered into with Network Automation;

    d.    Hewlett-Packard has not misappropriated any of the trade secrets or confidential information regarding technology of Network Automation;

    e.    Hewlett-Packard has not engaged in any acts which would constitute unfair competition;

    f.    Network Automation, its officers, agents, counsel, servants and employees and all persons in active concert or participation with any of them, be enjoined from charging infringement of or instituting any action for infringement of U.S. Patent No. 5,712,960 against Hewlett-Packard or its customers;

    g.    Network Automation, its officers, agents, counsel, servants and employees and all persons in active concert or participation with any of them, be enjoined from charging that Hewlett-Packard breached any of the terms of the Agreements entered into with Network Automation;

    h.    Network Automation, its officers, agents, counsel, servants and employees and all persons in active concert or participation with any of them, be enjoined from charging that Hewlett-Packard, the OpenView System or any other product used or sold by Hewlett-Packard utilizes misappropriated trade secrets or other confidential information of Network Automation;

    i.    Network Automation, its officers, agents, counsel, servants and employees and all persons in active concert or participation with them be enjoined from charging that Hewlett-Packard engaged in unfair competition; and

    j.    Awards Hewlett-Packard its costs and attorneys' fees, and such other

016.263592.2

necessary or proper relief as justice may require.

DATE: JANUARY 18, 2002

FOLEY & LARDNER
JAY P. HENDRICKSON
IVONNE MENA KING

BY: _____
JAY P. HENDRICKSON
ATTORNEYS FOR PLAINTIFF, HEWLETT-PACKARD COMPANY

-9-

COMPLAINT FOR DECLARATORY JUDGMENT
AND INJUNCTIVE RELIEF
Case No._____

016.263592.2